RHS:rhs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-6280 CR - GOLD

18 USC §1014            MAGISTRATE JUDGE
                          SIMONTON

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
RICHARD W. WATERS,                  )
a/k/a "Dick" Waters,                )
                                    )
            Defendant.              )
                                    )
_____)



### INDICTMENT

The grand jury charges that:

### INTRODUCTION

At all times material to this indictment:

1. Guaranty Federal Bank, F.S.B. ("Guaranty") is a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation. Guaranty has its principal place of business in Dallas, Texas. Among other banking functions, Guaranty engages in the business of issuing short term loans to mortgage lenders through lines of credit issued under contracts known as Warehousing Credit and Security Agreements.



2. The United States Department of Housing and Urban Development (hereinafter "HUD") is a department of the United States whose responsibilities include the implementation of programs designed to assist low and moderate income home buyers.

3. The Federal Housing Administration ("FHA") is an agency or division of HUD, which provides insurance on mortgage loans which are issued in compliance with HUD/FHA rules and regulations. An FHA insured mortgage is a mortgage which is backed by the full faith and credit of the United States.

4. The Government National Mortgage Association (GNMA - also known as "Ginnie Mae") is a government owned corporation within HUD. Ginnie Mae, through its Mortgage-Backed Securities Programs, guarantees the timely payment of principal and interest on securities that are based on and backed by groups of mortgages known as "pools". The mortgages in the pool must be issued by a Ginnie Mae and FHA approved lender, and they must be insured by HUD or another federal home loan insurance program. Ginnie Mae's guaranty is backed by the full faith and credit of the United States.

5. Waters Mortgage Corporation (hereinafter "WMC") was incorporated in the State of Florida and was engaged in the residential lending business. WMC was a HUD approved, non-supervised, direct endorsement lender. As a direct endorsement lender, WMC had the authority, on behalf of HUD, to underwrite and directly approve HUD insured loans. WMC was also an approved issuer of Ginnie Mae mortgage pools. WMC and its principals had the fiduciary duty to ensure that the mortgages approved by WMC were issued in accordance with HUD regulations. Additionally, WMC and its principals had the fiduciary duty to ensure that mortgages sold into Ginnie Mae pools had been issued and approved in accordance with Ginnie Mae regulations.

6. The Mortgagee Review Board was established in the FHA to take administrative actions against mortgagees and lenders who have violated rules and regulations of HUD. Administrative actions may include a suspension or withdrawal of a mortgagee or lender as a HUD approved lender. (24 CFR, Part 25).

7. RICHARD W. WATERS, a/k/a "Dick" Waters, was the chief executive of WMC and in that capacity controlled the day to day operations of the business. Waters had a fiduciary duty to HUD and Ginnie Mae to ensure that mortgages approved by WMC were issued in accordance with HUD and Ginnie Mae rules and regulations.

## THE 203(K) PROGRAM

8. A "203(k) loan" refers to one of the loan programs offered by HUD, under Section 203(k) of the National Housing Act. (Title 24, Code of Federal Regulations, part 203.50 and parts 203.440 through 203.495). The 203(k) program was set up to enable home buyers to finance both the purchase of a house and the cost of its rehabilitation through a single mortgage. Under this program, a qualified home buyer may finance more than 100% of the purchase price of a home. A portion of the loan proceeds is used to purchase the property from the seller, and the remaining funds are placed in an escrow account managed by the lender to be used for rehabilitation of the property. The rehabilitation funds are released as rehabilitation is completed. A home buyer must meet minimum underwriting standards, including making a minimum down payment and demonstrating the financial ability to make the monthly mortgage payments.

9. According to guidelines promulgated by HUD, non profit agencies are eligible to purchase properties under the 203(k) program, provided that they meet with certain eligibility requirements including, but not limited to, being approved by HUD as a qualified non profit

organization (HUD Handbook - 4155.1 Rev-4).   Non profit agencies also have to meet minimum underwriting standards, including demonstrating the financial ability to make the requisite down payment and meet its monthly mortgage payments (HUD Handbook - 4155.1 Rev 4; and HUD Handbook 4240.4 Rev 4-1.)

### WAREHOUSING CREDIT AGREEMENT

10. On or about January 19, 1996, RICHARD W. WATERS, on behalf of Waters Mortgage Corporation, entered into a Warehousing Credit and Security Agreement (hereinafter, the "Agreement") with Guaranty Federal Bank. Pursuant to the Agreement, Guaranty agreed to furnish Waters Mortgage with a $10 million line of credit ("warehousing credit line") which Waters Mortgage would use for the purpose of funding residential mortgage loans on a short term basis.

11. A warehousing credit line operates in the following way: A mortgage company (the "lender", such as Waters Mortgage) draws on its line of credit to fund mortgages it has approved. Prior to closing of the loan(s), the lender requests an "advance of funds" from the warehouse line of credit, which is used to fund the loans (mortgages). After the mortgages are issued, the lender groups the mortgages into Ginnie Mae pools, which are then sold to investors, i.e. on Wall Street. The proceeds of the sale of the pools are then used by the lender to repay the warehouse line.

12. Guaranty entered into the Agreement with Waters Mortgage Corporation based upon representations by RICHARD W. WATERS that Waters Mortgage Corporation would be utilizing the warehousing line of credit to fund multiple or group mortgages to non profit corporations under the 203(k) program. Therefore, Guaranty believed that all such mortgages were eligible to be sold into Ginnie Mae pools, thus ensuring prompt repayment to the warehousing line of credit.

13. Under Section 2.1(b) of the Agreement, RICHARD W. WATERS agreed that no advance of funds was to be made against any Mortgage Loan not covered by a Purchase Commitment. A "Purchase Commitment" is a written commitment by an Investor, in which the Investor commits to purchase the mortgage loan. An "Investor" includes Ginnie Mae or a financially responsible private institution purchasing mortgage loans pursuant to a purchase commitment.

14. RICHARD W. WATERS further agreed and warranted that, as of the date of each Advance Request:

a. There are no actions, claims, suits or proceedings pending or threatened against or affecting the Company in any court or before any government commission, board, bureau or other administrative agency which, if adversely determined, may reasonably be expected to result in any material and adverse change in the business, operations, assets, licenses, qualifications or financial condition of the Company as a whole. (Agreement, <u>Section 5.5</u>);

b. The Company is qualified and in good standing as a lender or seller/servicer as a GNMA approved issuer and servicer of mortgage loans guaranteed by GNMA and was a HUD approved lender, eligible to originate, purchase, hold, sell and service FHA-insured Mortgage Loans and to participate in HUD's Direct Endorsement Mortgage Insurance Program. (Agreement, <u>Section 5.13(a) and (b)</u>.

c. Each mortgage loan conforms to the requirements and the specifications set forth in the applicable Purchase Commitment and the related regulations, rules, requirements and/or handbooks for the applicable Investor and is eligible for sale to and insurance or guaranty by the applicable Investor (Agreement, <u>Section 5.14(e)</u>;

5

d.  Each of the mortgage loans has been originated, made and serviced in material compliance with all industry standards, including, but not limited to the Federal Real Estate Settlement Procedures Act of 1974, as amended (Agreement, Section 5.14(g);

e. All escrow/custodial accounts have been established in accordance with the requirements of FHA, VA and the applicable Investor and Insurer and all other applicable laws and by the terms of the related Mortgages (Agreement, Section 5.14(k).

15. The defendant, on behalf of Waters Mortgage further agreed that he shall: "Give prompt written notice to the Bank of (a) any action, suit or proceeding instituted by or against the Company ....before any commission or other regulatory body.......(d) the actual or threatened suspension, revocation or termination of the Company's eligibility, in any respect, as an approved lender ....... and (h) any other act or event or condition of any nature which may lead to or result in a material adverse effect upon the business, operations, assets or financial conditions of the Company" ..... (Agreement, Section 6.6).

16. The Agreement further stated that the failure of the Company to perform or comply with any term or condition applicable to it contained in Sections 6.1 through 6.13......would constitute an Event of Default. (Section 8.1 (c)).

## LENDING PRACTICES OF WATERS MORTGAGE CORPORATION

17. Beginning in or about 1992 and continuing through 1996, the defendant, RICHARD W. WATERS, as the chief executive of Waters Mortgage Corp., did undertake to approve and issue 203(k) FHA insured mortgages to non profit corporations. In doing so, the defendant engaged in a series of practices that circumvented and violated HUD rules and regulations as well as industry standards in the underwriting and approval of residential mortgages. These practices included

approving mortgages to borrowers who lacked the funds to make requisite down payments, inflating the purchase prices through "flip" transactions to generate the down payments and additional funds, conducting the sales through fictitious or "straw borrowers," falsifying information on settlement statements (HUD-1's), failing to properly maintain escrow funds and dissipating and converting escrow funds for the benefit of himself and Waters Mortgage Corporation.

### GINNIE MAE AND HUD ADMINISTRATIVE ACTIONS

18. Between in about August 1995 and March 1996, auditors from the HUD Office of Inspector General conducted an extensive audit of the mortgage practices of Waters Mortgage Corporation related to Waters' approval and issuance of HUD insured 203(k) mortgages.

19. On or about February 1, 1996, the HUD Mortgagee Review Board sent a certified letter to the defendant, RICHARD W. WATERS, advising him that the Mortgagee Review Board was considering administrative action against Waters Mortgage, pursuant to 24 CFR Parts 25 and 30. These actions would be based on numerous violations of HUD/FHA requirements in the origination of Sections 203(k) mortgages, which were cited in the letter.

20. On or about March 18, 1996, the Office of Inspector General, HUD, sent by certified letter a "draft" audit report and recommendation for sanctions to the defendant, RICHARD W. WATERS, and Waters Mortgage Corporation. In the letter, the Inspector General found that Waters Mortgage Corporation had committed numerous violations of HUD/FHA requirements in connection with the origination of Section 203(k) mortgages. In particular, the auditors found that Waters Mortgage Corporation did not exercise prudent lending practices, including furnishing false or incomplete data to HUD, circumventing the borrower down payment requirements and paying ineligible and unsupported closing costs to itself and to the borrower.

21. On or about May 16, 1996, Ginnie Mae sent a letter to the defendant, RICHARD W. WATERS, advising him that, due to the high delinquency rate of mortgages issued by Waters Mortgage Corporation, it's authority to purchase additional commitments, sub-service new pools and purchase servicing rights was being frozen immediately.

22. On or about May 22, 1996, the Federal Housing Commissioner of FHA sent a certified letter to the defendant, RICHARD W. WATERS, notifying him that Waters Mortgage Corporation has been placed in probationary status and in a pre-closing review status in HUD's direct endorsement program, based upon violations of HUD-FHA underwriting requirements.

23. On or about May 22, 1996, the HUD Mortgagee Review Board sent a certified letter to the defendant, RICHARD W. WATERS, advising him again that, based upon the final Audit Report dated May 13, 1996, the Mortgagee Review Board was considering administrative action and seeking to impose civil money penalties against Waters Mortgage Corporation.

## COUNT I

24. The United States reasserts and realleges paragraphs 1 - 23 as if fully set forth herein.

25. On or about June 6, 1996, in Broward County, in the Southern District of Florida, the defendant,

RICHARD W. WATERS,
a/k/a "Dick" Waters,

did knowingly and willfully make and cause to be made, false statements and reports for the purpose of influencing the action of Guaranty Federal Bank, a financial institution whose accounts were insured by the Federal Deposit Insurance Corporation, upon applications for advances on the Warehousing Credit and Security Agreement (the "Agreement"), totaling more than $3,000,000, in

that, in each Advance Request, the defendant caused to be falsely certified that all Mortgage loans conformed in all respects with the applicable requirements set forth in the Agreement, when, in truth and in fact, said mortgages did not conform with the Agreement, in that:

    1) the mortgages had not been originated in compliance with industry standards;

    2) escrow funds had not been properly kept or maintained;

    3) Waters Mortgage Corporation had caused an event of Default of the Agreement by failing to notify the bank of the pending actions of HUD and Ginnie Mae.

Furthermore, in each Advance Request the defendant caused to be falsely certified that Waters Mortgage Corp. was in possession of purchase commitments for each mortgage, when, in truth and in fact, Waters Mortgage Corp. did not hold or obtain purchase commitments relating to the mortgages.   All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT II

26.    The United States reasserts and realleges paragraphs 1 - 23 as if fully set forth herein.

27.    On or about July 26, 1996, in Broward County, in the Southern District of Florida, the defendant,

RICHARD W. WATERS,
a/k/a/ " Dick" Waters,

did knowingly and willfully make and cause to be made, false statements and reports for the purpose of influencing the action of Guaranty Federal Bank, a financial institution whose accounts were insured by the Federal Deposit Insurance Corporation, upon applications for advances on the Warehousing Credit and Security Agreement (the "Agreement"), totaling more than $1,445,000, in that, in the Advance Request, the defendant caused to be falsely certified that all Mortgage loans

conformed in all respects with the applicable requirements set forth in the Agreement, when, in truth and in fact, said mortgages did not conform with the Agreement, in that:

1) the mortgages had not been originated in compliance with industry standards;

2) escrow funds had not been properly kept or maintained;

3) Waters Mortgage Corporation had caused an event of Default of the Agreement by failing to notify the bank of the pending actions of HUD and Ginnie Mae and threatened litigation by Pacific Southwest Bank.

Furthermore, in each Advance Request the defendant caused to be falsely certified that Waters Mortgage Corporation was in possession of purchase commitments for each mortgage, when, in truth and in fact, Waters Mortgage Corporation did not hold or obtain purchase commitments relating to the mortgages.

All in violation of Title 18, United States Code, Sections 1014 and 2.

A TRUE BILL,

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY

10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: **RICHARD WATERS**

$100,000 PSB with co-suretors
(**Personal Surety**, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
ROGER H. STEFIN
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (CUSTOMS)   (OTHER)

CR - GOLD

01-6280

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE
JOHNSON

UNITED STATES OF AMERICA

CASE NO. _____

v.

**CERTIFICATE OF TRIAL ATTORNEY**

RICHARD WATERS

**Superseding Case Information:**

**Court Division:** (Select One)

New Defendant(s)       Yes ___   No ___
Number of New Defendants    ___
Total number of counts    ___

___ Miami   ___ Key West
X   FTL     ___ WPB   ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No) NO
   List language and/or dialect _____

4. This case will take __15__ days for the parties to try.

5. Please check appropriate category and type of offense listed below
   (Check only one)                              (Check only one)

   I    0 to 5 days      ___       Petty    ___
   II   6 to 10 days     ___       Minor    ___
   III  11 to 20 days    X         Misdem.  ___
   IV   21 to 60 days    ___       Felony   X
   V    61 days and over ___

FILED BY
01 NOV 16 PH 12:00
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

6. Has this case been previously filed in this District Court? (Yes or No) NO
If yes:
Judge: _____   Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) NO
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No) ___NO___

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? _X_ Yes __ No   If yes, was it pending in the Central Region? _X_ Yes __ No

8. Did this case originate in the Narcotics Section, Miami? __ Yes  X  No

_____
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0287334

*Penalty Sheet(s) attached                                    REV.6/27/00

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** RICHARD W. WATERS

Counts #: 1 & 2
FALSE STATEMENTS ON CREDIT APPLICATIONS
TITLE 18 U.S.C. §1014

* Max.Penalty: 30 YEARS' IMPRISONMENT AND $1,000,000 FINE FOR EACH COUNT

===========================================================================
Count #:

_____

*Max. Penalty: _____
===========================================================================
Count #:

_____

*Max. Penalty: _____
===========================================================================
Count #:

_____

*Max. Penalty: _____
===========================================================================
Count #:

_____

*Max. Penalty: _____

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

No. 04784

# UNITED STATES DISTRICT COURT
## Southern District of Florida
### Central Criminal Division

THE UNITED STATES OF AMERICA

vs.

RICHARD W. WATERS

## INDICTMENT

18 USC § 1014

A true bill.

_____
Foreperson

Filed in open court this 11-15-01 day,

of _____ A.D. 19___

_____
Clerk

Bail, $ _____